**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| Technical Automation Services Corp., et al., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 4:09-1103 |
| Liberty Surplus Insurance Corporation, et al., | § § § | |
| Defendants. | § § | |

## MEMORANDUM AND ORDER ON
## CROSS-MOTIONS FOR SUMMARY JUDGMENT

On July 8, 2009, the parties consented to proceed before a United States magistrate judge for all further proceedings, including trial and entry of a final judgment, under 28 U.S.C. § 636(c). (Docket Entry #11). Plaintiff Technical Automation Services Corp. ("Technical," "Plaintiff") has filed a motion for partial summary judgment, arguing that its insurer breached their insurance contract by failing to defend Technical in a pending personal injury lawsuit. (Plaintiff's Memorandum in Support of Amended Motion for Partial Summary Judgment ["Technical's Motion"], Docket Entry #35). That insurer, Defendant Liberty Surplus Insurance Corporation ("Liberty," "Defendant"), has filed its own cross-motion for summary judgment, arguing that it has neither a duty to defend nor to indemnify Technical on the pending claims. (Defendant Liberty Surplus

Insurance Corporation's Motion for Final Summary Judgment, Response to Plaintiff's Motion for Partial Summary Judgment, and Brief in Support ["Liberty's Motion"], Docket Entry #33). Liberty likewise denies any duty to defend or indemnify Intervenor OXY Vinyls, L.P. ("OXY Vinyls," "Intervenor") in the same underlying suit. (*Id.*). The parties have responded and replied to the various pleadings. (Plaintiff Technical Automation Services Co., Ltd's Reply to Defendant Liberty Surplus Insurance Corporation's Response to Plaintiff's Motion for Partial Summary Judgment and Plaintiff's Response to Defendant Liberty Surplus Insurance Corporation's Motion for Final Summary Judgment, Objection to and Motion to Strike Summary Judgment Evidence and Brief in Support, Docket Entry #37; Intervenor OXY Vinyls, L.P.'s Response to Defendant Liberty Surplus Insurance Corporation's Motion for Final Summary Judgment, Docket Entry #38; Defendant Liberty Surplus Insurance Corporation's Response to Plaintiff's Amended Motion for Partial Summary Judgment, Docket Entry #40; Plaintiff Technical Automation Services Co., Ltd.'s Reply to Defendant Liberty Surplus Insurance Corporation's Response to Plaintiff's Amended Motion for Partial Summary Judgment and Brief in Support, Docket Entry #42; Intervenor OXY Vinyls, L.P.'s Brief in Support of OXY Vinyls, L.P. Qualifying as a Named Insured to the LSIC Policy, Docket Entry #45; Plaintiff's Supplemental Brief on Issue of Named Insured Versus

Additional Insured, Docket Entry #46; Defendant Liberty Surplus Insurance Corporation's Supplemental Summary Judgment Brief on OXY Vinyls' Contention that it is a Named Insured Under the Insurance Policy at Issue, Docket Entry #47; Defendant Liberty Surplus Insurance Corporation's Supplemental Summary Judgment Brief on Mutual Mistake, Docket Entry #48). After a review of the pleadings, the evidence presented, the arguments of counsel, and the applicable law, it is **ORDERED** that Liberty's request to reform the insurance contract is **DENIED**. It is further **ORDERED** that Technical's motion is **GRANTED** in its entirety, and that Liberty's motion is **DENIED** as to the claims by Technical, but **GRANTED** as to the claims by OXY Vinyls.

**BACKGROUND**

This suit arises out of Liberty's refusal to defend Technical and OXY Vinyls in a suit pending in Texas state court. (Liberty's Motion p.1). In 2004, Liberty issued Technical a commercial general liability insurance policy, number DGL-BO-199658-023, for a period of one year, to begin on February 21, 2004. (*Id.* p.4). The policy states that Liberty "will have the right and duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage'" that "occurs during the policy period." (Ex. 1c to Liberty's Motion: *insurance policy DGL-BO-199658-023* [the "policy"]). The policy also included a "Miscellaneous Errors and Omissions" endorsement, which provided as follows:

> Subject to the conditions and exclusions in the Coverage Part, the coverage afforded by this endorsement shall apply to those sums which you shall become legally obligated to pay as damages as a result of any negligent act, error, or omission committed by you, that results in "bodily injury" or "property damage" committed during the policy period in the conduct of the operations shown in the Schedule above.

(Ex. 1c to Liberty's Motion: *Endorsement No. 19 – Miscellaneous Errors and Omissions endorsement* [the "E&O endorsement"]). Finally, the policy contained an endorsement titled "Additional Insured-By Written Contract." (*Id.*: *Endorsement No. 1 – Additional Insured – By Written Contract endorsement* [the "Additional Insured endorsement"]). That endorsement is set out below:

> WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization with whom you have agreed to add as an additional insured by written contract but only with respect to liability arising out of your operations or premises owned by or rented to you.

(*Id.*).

In 2005, Technical contracted with OXY Vinyls to oversee the "removal and inspection of a chlorine flow transmitter and the installation of a new transmitter" at the Intervenor's Deer Park Caustic Plant. (Ex. 2 to Liberty's Motion: Plaintiff's Fifth Amended Petition, *Juan Valdavions v. OXY Vinyls, L.P., et. al.*, Case No. 2007-08037 ["Valdavinos Complaint"]). Technical also agreed to the following "terms and conditions":

> 22. INDEMNIFICATION AND INSURANCE. [Technical] indemnifies, defends and holds harmless [OXY Vinyls], its affiliates, their agents, employees and representatives, from

and against all liabilities, claims, demands, losses, damages, costs and expenses, including, without limitation, attorney's fees, amounts paid in settlement and litigation costs, concerning injury or damage of any kind to person(s) or property(ies) alleged to be caused by, resulting from or attributable to defective material or workmanship in any goods, or any act or omission of [Technical], its employees or representatives and regardless of any concurrent or contributing fault of [OXY Vinyls].

* * *

[TECHNICAL] ACKNOWLEDGES THAT ITS LIABILITY AND INDEMNITY OBLIGATIONS UNDER THIS SECTION SHALL BE WITHOUT REGARD TO THE NEGLIGENCE OF [OXY Vinyls]. WHEN [OXY VINYLS'] NEGLIGENCE IS A JOINT, CONCURRENT OR A PARTIAL CAUSE OF THE INCIDENT, OCCURRENCE OR RESULTING LOSS, DESTRUCTION, DAMAGE, INJURY, SICKNESS, DISEASE OR DEATH, AND WITHOUT MONETARY LIMIT TO THE EXTENT PERMITTED BY LAW, IT IS THE PARTIES' INTENTION THAT THIS SECTION'S INDEMNIFICATION IS INTENDED TO EXPRESSLY INDEMNIFY [OXY VINYLS] FOR THE CONSEQUENCES OF ITS OWN STRICT LIABILITY, NEGLIGENT ACTS AND OMISSIONS TO THE EXTENT EXPRESSLY PROVIDED HEREIN.

* * *

At all times during the term of this Order, [Technical] shall obtain and maintain, at its sole cost and expense, commercial general liability . . . insurance coverage to insure [OXY Vinyls] in accordance with the foregoing indemnification . . .

(Ex. A to OXY Vinyls' Response: *1/21/05 Purchase Order between Technical and OXY Vinyls*).

Technical completed its work on the transmitter on February 17, 2005. (Valdavinos Complaint). On February 24, 2005, however, three days after Plaintiff's insurance coverage under the policy with Liberty had

expired, an OXY Vinyls employee, Juan Valdavinos, was injured by a chlorine leak at the Deer Park plant. (*Id.*). In 2007, Valdavinos brought a personal injury lawsuit against both Technical and OXY Vinyls in the District Court for Harris County, Texas, 295th Judicial District ("the "Valdavinos suit"). (*Id.*). Valdavinos alleged that his injuries were the result of negligence by both companies. (*Id.*). Specifically, Valdavinos alleged that Technical failed to calibrate the new transmitter properly, and that OXY Vinyls did not properly supervise Technical, or provide adequate safety measures in the event of a chlorine leak. (*Id.*).

Technical submitted a timely claim for a legal defense to the Valdavinos suit, and, on October 15, 2008, Liberty sent a letter denying coverage. (Plaintiff's Second Amended Original Complaint ["Technical's Complaint"], Docket Entry #26). The insurer reasoned that the Valdavinos suit was not covered because the alleged injury did not occur until after the policy period had expired. (*Id.*). OXY Vinyls also tendered a request for defense and indemnification to Liberty, in September 2008, and again in February 2009. (First Amended Complaint of Intervenor OXY Vinyls, L.P. ["OXY Vinyls' Complaint"], Docket Entry #27). It appears, however, that Liberty did not respond to either request by OXY Vinyls. (*Id.*).

Technical filed this action for breach of contract and declaratory judgment on March 2, 2009, in the District Court of Harris County, Texas, 55th Judicial District. (Notice of Removal, Docket Entry #1). On March 26,

2009, OXY Vinyls intervened in the action to assert its own claims for breach of contract and declaratory judgment. (*Id.*). Liberty removed the case to this court on April 14, 2009. (*Id.*). Before this court are motions for summary judgment from Technical and Liberty. On November 18, 2009, Technical moved for partial summary judgment on the issue of Liberty's duty to defend (Technical's Motion). Technical argues that Liberty is obligated to defend it in the underlying suit because Valdavinos raises a claim for negligence that is covered by the E&O endorsement in the policy. (*Id.*). On February 19, 2010, Liberty filed its own motion for summary judgment. (Liberty's Motion). As a threshold matter, Liberty argues that the E&O endorsement was included in the policy by mistake, and it asks the court to "reform" the parties' agreement to nullify the endorsement. (*Id.*). Liberty argues further that it has no duty to defend, or to indemnify, Technical or OXY Vinyls, because Valdavino's alleged injury took place outside of the coverage period. (*Id.*). Finally, Liberty argues that OXY Vinyls is not entitled to coverage because it is not a "Named Insured" under the endorsement to the policy. (*Id.*). After a review of the pleadings, the evidence presented, the arguments of counsel, and the applicable law, it is **ORDERED** that Liberty's motion is **DENIED** on the issue of reformation, and as to the claims by Technical, but **GRANTED** as to the claims by OXY Vinyls. It is further **ORDERED** that Technical's motion is **GRANTED** in its entirety.

**STANDARD OF REVIEW**

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Under Rule 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the non-movant's case. *Duffie v. U.S.*, 600 F.3d 362, 371 (5th Cir. 2010). If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the non-movant's response. *Id.* When the moving party has met its Rule 56 burden, the non-movant cannot survive a motion for summary judgment by resting merely on the allegations in its pleadings. *Prejean v. Foster*, 227 F.3d 504, 508 (5th Cir. 2000). If the movant does meet his burden, the non-movant must go beyond the pleadings and designate specific facts to show that there is a genuine issue for trial. *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006). Further, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Thibodeaux v. Vamos Oil & Gas Co.*, 487 F.3d 288, 295

(5th Cir. 2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

To meet its burden, the nonmoving party must present "significant probative" evidence indicating that there are issues of fact remaining for trial. *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). If the evidence presented to rebut the summary judgment motion is only colorable or not significantly probative, summary judgment should be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-250 (1986). But, in deciding a summary judgment motion, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 248. However, Rule 56 "mandates the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of poof at trial." *Celotex Corp.*, 477 U.S. at 322; *Versai Management Corp. v. Clarendon America Ins. Co.*, 597 F.3d 729, 735 (5th Cir. 2010).

**DISCUSSION**

The parties agree that the policy, issued in Texas, is governed by Texas law. (Liberty's Motion p.1; Technical's Motion p.3; OXY Vinyls' Response p.1). It is well settled, under Texas law, that an insurer owes a duty to defend its insured against allegations that are covered by the

policy. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.,* 939 S.W.2d 139, 141 (Tex. 1997). Texas law is also well-settled that the duty to defend is a broader one than the duty to indemnify. *St. Paul Fire & Marine Ins. Co. v. Green Tree Financial Corp.-Tex.,* 249 F.3d 389, 391 (5th Cir.2001); *Gulf Chem. & Metallurgical Corp. v. Assoc. Metals & Minerals Corp.,* 1 F .3d 365, 369 (5th Cir.1993); *St. Paul Ins. Co. v. Texas Dept. of Transp.,* 999 S.W.2d 881, 884 (Tex.App.-Austin 1999, no pet.); *Colony Ins. Co. v. H.R.K., Inc.,* 728 S.W.2d 848 (Tex.App.-Dallas 1987, no writ). "[A]n insurer is obligated to defend an insured as long as the complaint alleges at least one cause of action within the policy's coverage." *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,* 99 F.3d 695, 701 (5th Cir.1996); *and see Rhodes v. Chicago Ins. Co.,* 719 F.2d 116, 119 (5th Cir.1983) (citing *Superior Ins. Co. v. Jenkins,* 358 S.W.2d 243, 244 (Tex.Civ.App.-Eastland 1962, writ ref'd n.r.e.); *Maryland Cas. Co. v. Moritz,* 138 S.W.2d 1095, 1097-98 (Tex.Civ.App.-Austin 1940, writ ref'd)); *American Eagle Ins. Co. v. Nettleton,* 932 S.W.2d 169, 173 (Tex.App.-El Paso 1996, writ denied). Indeed, the obligation to defend arises if there is even "potentially, a case under the complaint within the coverage of the policy." *Rhodes,* 719 F.2d at 119; *Merchants,* 939 S.W.2d at 141; *Heyden Newport Chem. Corp. v. Southern Gen'l Ins. Co.,* 387 S.W.2d 22, 26 (Tex.1965) (quoting 50 A.L.R.2d 458, 504). It is, however, the insured's burden to show "that the claim against

it is potentially within the policy's coverage." *Canutillo,* 99 F.3d at 701; *and see Employers Cas. Co. v. Block,* 744 S.W.2d 940, 944 (Tex.1988), *overruled on other grounds by State Farm Fire and Cas. v. Gandy,* 925 S.W.2d 696 (Tex.1996). On the other hand, "the insurer bears the burden of establishing that an exclusion in the policy constitutes an avoidance of or affirmative defense to coverage." *Canutillo,* 99 F.3d at 701 (citing Tex. Ins. Code art. 21.58(b)).

To determine if a duty to defend exists, a district court must limit its review to the "four corners" of the insurance policy and the "four corners" of the allegations in the underlying complaint. *Merchants,* 939 S.W.2d at 140; *Providence Wash. Ins. Co. v. A & A Coating, Inc.,* 30 S.W.3d 554, 555 (Tex.App.-Texarkana 2000, pet. denied); *Tri-Coastal Contractors, Inc. v. Hartford Underwriters Ins. Co.,* 981 S.W.2d 861 (Tex.App.-Houston [1st Dist.] 1999, pet. denied). This requirement, known as the "eight corners" or "complaint allegation" rule, governs this dispute. *See Merchants,* 939 S.W.2d at 141; *Green Tree Financial,* 249 F.3d at 391; *Canutillo,* 99 F.3d at 701. Under this rule, a court must begin its consideration of the insurer's duty, if any, by examining the insurance policy at issue. *See, e.g., Canutillo,* 99 F.3d at 700. Texas law is clear that the interpretation of an insurance policy is a question of law subject to the same rules that apply to contracts generally. *Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 133 (Tex.1994); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson*

*Energy Co.,* 811 S.W.2d 552, 555 (Tex.1991); *Barnett v.. Aetna Life Ins. Co.,* 723 S.W.2d 663, 665 (Tex.1987); *Coker v. Coker,* 650 S.W.2d 391, 393-94 (Tex.1983). Further, "in reviewing the underlying pleadings, the court must focus on the actual allegations that show the origin of the damages rather than on the legal theories alleged." *Id.* In other words, "it is not the cause of action alleged which determines coverage but the *facts* giving rise to the alleged actionable conduct." *Id.* (quoting *Adamo v. State Farm Lloyds Co.,* 853 S.W.2d 673, 676 (Tex.App.-Houston [14th Dist.] 1993, writ denied)). For that reason, "[i]f a petition alleges facts that, *prima facie,* exclude the insured from coverage, [then] the insurer has no duty to defend." *Taylor v. Travelers Ins. Co.,* 40 F.3d 79, 81 (5th Cir.1994) (quoting *Adamo,* 863 S.W.2d at 677); *and see Fidelity & Guar. Ins. Underwriters, Inc. v. McManus,* 633 S.W.2d 787, 788 (Tex.1982). On the other hand, if it is unclear whether the third party's factual allegations do, in fact, state a covered cause of action, then the underlying complaint "must be liberally construed in favor of the insured." *St. Paul Fire & Marine Ins. Co. v. Green Tree Financial Corp.-Tex.,* 249 F.3d 389, 392 (5th Cir.2001) (citing *Terra Int'l v. Commonwealth Lloyd's Ins. Co.,* 829 S.W.2d 270, 272 (Tex.App.-Dallas 1992, writ denied); *and see Merchants,* 939 S.W.2d at 141; *Heyden,* 387 S.W.2d at 26.

In its multiple arguments, Technical underscores Liberty's duty to defend it under the Errors and Omissions endorsement to the disputed

policy. At the outset, however, Liberty contends that the endorsement should not be enforced because it was only included in the policy as a result of a mutual mistake by the parties. (Liberty's Motion p.2). More specifically, Liberty contends that the parties had an agreement, embodied in a policy binder, that the final insurance policy issued to Plaintiff would include a professional liability exclusion. (*Id.*). Instead, Liberty argues, the final written policy that was issued erroneously included an E&O endorsement, rather than the professional liability exclusion that the parties had contracted for. (*Id.*). For that reason, Liberty asks the court to "reform" the policy to remove the endorsement. (*Id.*). In response, Technical insists that it intended to contract for E&O coverage, and that any mistake was unilateral on the part of Liberty. (Technical's Response). Technical has also moved to strike the exhibits and affidavits from Liberty employees that Defendant has offered to demonstrate that a mutual mistake occurred. (*Id.*).

Under Texas law, a party seeking reformation of a contract must show (1) that there was an original agreement, and (2) that a mutual mistake took place in reducing the agreement to writing. *Cherokee Water Co. v. Forderhause*, 741 S.W. 2d 377, 379 (Tex. 1987). Liberty argues that the first element is demonstrated by the policy "binder" between it and Technical. (Ex. 1c to Liberty's Motion). A binder is a temporary contract for insurance that is in force while the final policy is reduced to writing. *See*

*Medical Care America, Inc. v. National Union Fire Ins. Co.*, 341 F.3d 415 (5th Cir. 2003). That binder, Liberty points out, did not list any E&O coverage, but instead, under the heading "Coverage," listed only "GENERAL LIABILITY." (*Id.*). Technical underscores, however, that the binder is explicit that it "may not provide all coverage and considerations requested in the application provided." (*Id.*). Technical also notes that its President, John Burkland, testified in his deposition that Plaintiff "did not want professional liability, but we did want errors and omissions" coverage. (Ex. 4 to Liberty's Motion; Deposition of John M. Burkland 93:23-25) On this record, then, there is a fact question on whether there was an "original agreement" to exclude E&O coverage. For that reason, Defendant has not shown that it is entitled to reformation as a matter of law, and so, summary judgment is not appropriate, and its motion on that issue is denied. Rule 56(c); *Cherokee Water Co.*, 741 S.W. 2d at 379. Further, because there is a genuine issue of material fact on whether an original agreement existed, the court need not determine whether Liberty's evidence on the issue of mutual mistake should be struck, as Technical requests. Even considering that evidence, summary judgment is precluded because Defendant has not met the first requirement for reformation, that is, that the parties had an original agreement. *Cherokee Water Co.*, 741 S.W. 2d at 379.

Liberty argues that even if the E&O endorsement is valid, it nevertheless does not provide coverage for the Valdavinos suit. The endorsement states that the insurance policy provides coverage for "any negligent act, error, or omission committed by you, that results in 'bodily injury' or 'property damage' committed during the policy period." (Ex. 1c to Liberty's Motion: the E&O endorsement). In their pleadings, Technical and Liberty offer conflicting interpretations of that endorsement language. Simply put, the parties dispute whether "committed during the policy period" applies to "act, error, or omission," or to "'bodily injury' or 'property damage.'" In the underlying suit, Valdavinos alleges that he was injured *outside* of the coverage period, by Technical's negligent acts that took place *during* the policy period. If, as Plaintiff asserts, "committed during the policy period" refers to an "act, error, or omission," then the endorsement is triggered, and Liberty owes Technical a duty to defend. If, however, "committed during the policy period" modifies "'bodily injury' or 'property damage,'" then no duty to defend exists because Valdavinos' injury took place outside of the policy period.

The Texas Supreme Court has held that, in "construing a contract, the court's primary concern is to give effect to the written expression of the parties' intent." *Forbau,* 876 S.W.2d at 133; *see also Balandran v. Safeco Ins. Co. of America,* 972 S.W.2d 738, 741 (Tex.1998); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. CBI Indus., Inc.,* 907 S.W.2d 517, 520

(Tex.1995). This intent is determined, first, by examining "the language of the contract itself." *Empire Fire and Marine Ins. Co. v. Brantley Trucking, Inc.,* 220 F.3d 679, 681 (5th Cir.2000) (citing *Puckett v. U.S. Fire Ins. Co.,* 678 S.W.2d 936, 938 (Tex.1984)). If the policy language is susceptible to more than one reasonable interpretation then it is deemed ambiguous, and the court must "resolve the uncertainty by adopting the construction that most favors the insured." *Hudson Energy,* 811 S.W.2d at 555 (citing *Barnett,* 723 S.W.2d at 667; *Ramsay v. Maryland Am. Gen. Ins. Co.,* 533 S.W.2d 344, 349 (Tex.1976); *Brown v. Palatine,* 89 Tex. 590, 35 S.W.1060, 1061 (1896)). But a policy is not ambiguous if it is worded so that it can be given only one reasonable construction. *Hudson Energy Co.,* 811 S.W.2d at 555; *Puckett v. U.S. Fire Ins. Co.,* 678 S.W.2d 936, 938 (Tex.1984). And, as the Texas Supreme Court has recognized on several occasions,

> Not every difference in the interpretation of ... an insurance policy amounts to an ambiguity. Both the insured and the insurer are likely to take conflicting views of coverage, but neither conflicting expectations nor disputation is sufficient to *create* an ambiguity.

*State Farm Life Ins. Co. v. Beaston,* 907 S.W.2d 430, 433 (Tex.1995); *Forbau,* 876 S.W.2d at 134. To give effect to the parties' intent, the court must assign the words of the policy "their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense." *See Heritage Resources, Inc. v.*

*NationsBank,* 939 S.W.2d 118, 121 (Tex.1996). Nor may extrinsic evidence be introduced "to contradict or vary the meaning of the explicit language of the parties' written agreement." *CBI Indus.,* 907 S.W.2d at 521.

It is fundamental that Technical bears the burden here to show that coverage exists under the policy. *See Canutillo,* 99 F.3d at 701. In support of its interpretation of the policy language, Technical relies on the well-settled rule of construction that, when interpreting a provision, the contract must be read as a whole. *See Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983). To that end, Technical points to the fact that "committed" is used earlier in the endorsement to modify "act, error or omission." Technical also notes that elsewhere the policy states that an injury "occurs" rather than is "committed."

In response to Technical's proposed interpretation of the disputed policy language, Liberty cites several cases in which courts have described injuries as having been "committed." The issue for the court, however, is not whether reading "committed" to modify injury is more reasonable than not, but whether reading it to modify "act" is unreasonable. *See Hudson Energy,* 811 S.W.2d at 555. Liberty argues that it is unreasonable to read the endorsement as Plaintiff suggests, because "act, error or omission" and "committed during the policy period" are separated by a comma. It is true that punctuation can aid in interpreting a contract. *See Criswell v. European Crossroads Shopping Ctr., Ltd.,* 792 S.W.2d 945, 948 (Tex.1990).

But it is ultimately the text, not the punctuation, that is controlling. *Id.* Despite the comma before "that," it is clear that at least part of the text that follows modifies "act, error or omission." Because Plaintiff's proposed interpretation, that "committed during" refers to "act, error or omission," is supported by a well-settled rule of construction, the court cannot say that that contention is unreasonable.

For that reason, even if Liberty's competing view is also reasonable, the provision is ambiguous, at best, and must be construed in favor of Technical. *See Hudson Energy,* 811 S.W.2d at 555. The endorsement, then, must be read to provide coverage for any negligent "act, error or omission . . . committed during the policy period." *See id.* The Valdavinos suit alleges that Technical acted negligently on February 17, 2005, four days before the policy ended. On this record, then, Liberty owes Technical a duty to defend it in the Valdavinos suit. Plaintiff's motion on the issue is granted, and Liberty's motion is denied.

Liberty has also moved for summary judgment on its duty to indemnify Techincal. The duty to indemnify "is triggered by the actual facts that establish liability in the underlying lawsuit." *Guar. Nat'l Ins. Co. v. Azrock Indus. Inc.*, 211 F.3d 239, 243 (5th Cir.2000). "Accordingly . . . an insurer's duty to indemnify cannot be determined until after the underlying suit has been resolved." *Columbia Cas. Co. v. Georgia & Florida RailNet, Inc.*, 542 F.3d 106, 111 (5th Cir. 2008) (citing *Collier v. Allstate*

*County Mut. Ins. Co.*, 64 S.W.3d 54, 62 (Tex.App.—Fort Worth 2001)). There is an exception, however, "when the insurer has no duty to defend and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify." *Id.* (quoting *Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex.1997)). Because the court finds that Liberty does owe Technical a duty to defend, the exception does not apply, and it is premature to rule on the issue of indemnification at this time. *Id.*

### OXY Vinyls' Claim in Intervention

OXY Vinyls contends that it is also entitled to coverage under the E&O endorsement, based on its agreement with Technical. The court has already determined that the policy endorsement can be reasonably interpreted to cover injuries, such as Valdavinos', that arise outside of the policy period. However the endorsement is clear that the injury must result from "acts. . . committed by *you*." The terms "you" and "your" are defined in the policy to be "the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy." There is no dispute that Technical is the only "Named Insured" listed in the policy Declarations. Further, section II.4 of the policy describes those entities that "qualify" as a "Named Insured" as follows:

> Any organization you newly acquire or form, other than a partnership, joint venture, or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization.

OXY Vinyls has not alleged that it was "acquire[d] or form[ed]" by Technical, nor that Plaintiff "maintain[s] ownership or majority interest" over it. On this record, then, OXY Vinyls is not a "Named Insured" as provided in the E&O endorsement to the policy, and Liberty has no duty to defend Intervenor under it.

Nevertheless, OXY Vinyls insists that even if it is not covered as a "Named Insured" under the E&O endorsement, it is still entitled to a legal defense because it is an "insured" under the general coverage provisions of the policy itself. Those provisions state that Liberty "will have the right and duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage.'" But unlike the E&O endorsement, that duty is triggered only if the injury or damage "occurs during the policy period."

Here, it is undisputed that OXY Vinyls is an "insured" under the "Additional Insured" endorsement, which states as follows:

> WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization with whom you have agreed to add as an additional insured by written contract but only with respect to liability arising out of your operations or premises owned by or rented to you.

But it is also undisputed that Valdavinos' alleged injury did not arise until after the insurance policy expired. Because OXY Vinyls, as an "insured," is entitled to a legal defense only if the underlying "bodily injury" or "property damage" occurred "during the policy period," Valdavinos' lawsuit does not trigger Liberty's duty to defend Intervenor. For that reason, Liberty's motion is granted on the claims by OXY Vinyls.

**CONCLUSION**

Based on the foregoing, it is **ORDERED** that Technical's motion is **GRANTED** in its entirety, and that Liberty's motion is **DENIED** as to the claims by Technical, but **GRANTED** as to the claims by OXY Vinyls. It is **ORDERED** further that Liberty's motion is **DENIED** on the issue of reformation.

The Clerk of the Court shall enter this order and provide a true copy to all counsel of record.

**SIGNED** at Houston, Texas, this 17th day of May, 2010.

**MARY MILLOY**
**UNITED STATES MAGISTRATE JUDGE**